Steven A. Morelli (SM-4721)
Paul Bartels (PB-1604)
The Law Office of Steven A. Morelli, P.C.
1461 Franklin Avenue
Garden City, NY 11530
(516) 393-9151

*Attorneys for Plaintiff*

SUMMONS ISSUED
SUMMONS ISSUED
CV-13 2917

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 17 2013 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
LARRY McCORD,

                             Plaintiff,

    -against-

WYANDANCH UNION FREE SCHOOL DISTRICT,
WYANDANCH UNION FREE SCHOOL DISTRICT
BOARD OF EDUCATION, MARY JONES, and
PLESS M. DICKERSON,
                             Defendants.
-------------------------------------------------------------------X

**COMPLAINT**
*Jury Trial Demanded*

      Plaintiff LARRY McCORD, by and through his attorneys, THE LAW OFFICE OF STEVEN A. MORELLI, P.C., respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. The Wyandanch Union Free School District's ("District") website declares that "Our schools have an equal responsibility with the home, church, and community to reinforce those moral, spiritual and patriotic values upon which our own culture has been built." The reality, however, is that the District engages in and condones blatantly immoral, repugnant and illegal activities by its Administrators. Plaintiff Larry McCord has bore the brunt of the District's despicable culture, as he has

1

been subjected to repeated sexual abuse, harassment, extortion, defamation, and retaliation.

2. Mr. McCord, the former President of the Board of Education, is a career educator and administrator who is highly dedicated to the education and development of his students and school communities. Since 1998, Mr. McCord has tirelessly worked at the District to promote student growth and achievement. Sadly, in the face of his commitment to education, Mr. McCord has been subjected to outrageous and blatant sexual harassment and retaliation by Defendants.

3. The details of Mr. McCord's experiences at the District are both graphic and chilling. He has been physically groped, verbally harassed, blatantly threatened, and even extorted as part of his daily ritual at the District. Shockingly, Defendant Assistant Superintendent Mary Jones has repeatedly grabbed Mr. McCord's buttocks, rubbed his legs, arms and chest, and grunted sexual noises at him. At all times, Mr. McCord vigorously rejected Jones's advances, and he clearly expressed his disinterest in any sexual relationship with his superior. When Mr. McCord complained about this degrading sexual harassment to the District's Superintendent, Pless Dickerson, his complaints were laughed off, and they were ignored.

4. Defendant Mary Jones, the District's Assistant Superintendent, wanted what she could not have, namely, Mr. McCord. Between 1998 and 2012, Jones repeatedly

groped Mr. McCord, and rubbed herself on him in a sexual manner. Mr. McCord always rejected these advances, as he attempted to physically distance himself from Jones. However, as time went on, she grew increasingly frustrated that McCord refused her sexual advances, and she intensified her harassment. Jones's sexual advances grew more sophisticated as she assumed higher offices in the District, furthering her attempts to coerce Mr. McCord into sexual acts and favors.

5. After Jones was appointed Assistant Superintendent, she personally appointed Mr. McCord to the position of District Wide PTO Coordinator, for the Parent Organization, ensuring that they would work closely together. After Mr. McCord took office, Jones forced him to stay late to eat dinner with her, mostly in her office, at his expense, under the ruse of discussing PTO business. Further, Jones repeatedly invited Mr. McCord to her home for dinner, and she implied, through innuendo and inappropriate grunts, that she expected him to sleep with her. Jones was transparently using the power of her office to pressure her subordinate to engage in unwanted sexual relations.

6. Jones also implied that Mr. McCord would gain certain favor with her if he accompanied her on a trip to Jamaica, and stayed with her at her house. When Mr. McCord politely declined Jones's invitation, she demanded that he pay her five thousand dollars ($5,000), for her purported school in Jamaica. Fearful for his job, Mr. McCord succumbed to Jones's pressure, and he wrote two checks as

donations to her project in Jamaica, for a total of $500, which was all he could afford at the time.

7. Infuriated with Mr. McCord's repeated rejections, Jones set out to destroy his career. Jones stripped Mr. McCord of his Attendance Supervisor position, and she caused him to lose significant income as a result thereof. Unbelievably, Jones refused to adequately staff Mr. McCord's department unless he had sex with her. He complained vigorously to Human Resources and to the Superintendent that he was being sexually harassed and retaliated against, to no avail. After Mr. McCord had exhausted all possible means of redress, he finally put his complaints in writing. In return, Defendants, including Jones and Superintendent Pless Dickerson, targeted him with an investigation, and claimed that he was improperly receiving his doctoral stipend. Defendants' actions were brazen, illegal and have severely damaged Mr. McCord both financially and emotionally.

8. Shockingly, after Mr. McCord complained in writing about these illegal acts, Jones was put up for "Administrator of the Year" by the District and Superintendent Dickerson. Jones was subsequently named the guest of honor at a huge taxpayer funded gala, a clear District endorsement of her actions. The Defendants' simultaneous harassment of Mr. McCord and celebration of Defendant Jones confirms that the District and the Board approve and encourage illegal sexual harassment and retaliation by its administrators.

9. As more fully set forth below, in; (1) treating Mr. McCord differently than his similarly situated female co-workers; (2) subjecting Mr. McCord to a hostile work environment on the basis of his gender; (3) retaliating against Mr. McCord due to his complaints of discrimination; (4) extorting Mr. McCord due to his gender; and (5) defaming Mr. McCord's character, Defendants violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. §1983, New York State Executive Law §§ 290 et seq. ("NYHRL"), and New York State common law.

### JURISDICTION AND VENUE

10. This Court has original jurisdiction over Mr. McCord's federal claims pursuant to 28 U.S.C. §§ 1331 & 1343. This Court has supplemental jurisdiction over Mr. McCord's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Mr. McCord and Defendants.

11. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because (1) the Defendants are located in Suffolk County, New York, which is located in the Eastern District of New York, and (2) the events which give rise to Mr. McCord's claims took place in Suffolk County, New York, which is located in the Eastern District of New York.

12. All conditions precedent to filing suit have been fulfilled. On or about February 15, 2013, Mr. McCord served a timely Notice of Claim on Defendants. On April

23, 2013, Mr. McCord testified at a 50(h) hearing at Defendants' counsel's office. Mr. McCord is concurrently filing a charge of discrimination with the EEOC and the New York State Division of Human Rights.

## PARTIES

13. Plaintiff Larry McCord is an African-American male, who is a resident and domiciliary of Suffolk County, NY. At all times relevant to this complaint, Mr. McCord was an "employee" of Defendants, as that term is defined by Title VII and the NYHRL.

14. Defendants Wyandanch Union Free School District ("District") and Wyandanch Union Free School District Board of Education ("Board") are a public school district and municipal corporation organized and existing under the laws of the State of New York, and a recipient of state and federal financial assistance, with their administrative offices located at 1445 Martin Luther King Jr. Blvd., Wyandanch, New York 11798. At all times relevant to this complaint, Defendants District and Board were Mr. McCord's "employer" as that term is defined by Title VII and the NYHRL.

15. Defendant Mary Jones ("Jones") is the Assistant Superintendent for Human Resources at the District, with her office located at 1445 Martin Luther King Jr. Blvd., Wyandanch, New York 11798. At all times relevant to this complaint,

Defendant Jones was Mr. McCord's "employer" as that term is defined by Title VII and the NYHRL.

16. Defendant Pless M. Dickerson ("Dickerson") is the Superintendent at the District, with his office located at 1445 Martin Luther King Jr. Blvd., Wyandanch, New York 11798. At all times relevant to this complaint, Defendant Dickerson was Mr. McCord's "employer" as that term is defined by Title VII and the NYHRL.

## FACTUAL ALLEGATIONS

17. Mr. McCord, an African American male, commenced his employment with Defendants in 1998 as a District attendance teacher. Mr. McCord has previously served in several high ranking positions in the District, such as the President of the Board of Education and as General Legal Counsel for the District. In or around 2007, Mr. McCord assumed his current position as the District's Attendance Supervisor. Mr. McCord has consistently received glowing performance evaluations and has spearheaded several successful District-wide programs, including partnerships with local colleges.

18. Throughout his employ with Defendants, Mr. McCord has been subjected to systematic and continuous sexual harassment by Defendant Jones. Defendant Jones has worked in several capacities since 1998, including Principal at Wyandanch High School, Superintendent of the District, and her current position as Assistant Superintendent for Human Resources.

19. Jones's sexual harassment of McCord began immediately after he commenced his employment with the District in 1998. For example, in 1998, Jones asked Mr. McCord to help her put files and work related materials in the back seat of her car. While Mr. McCord was placing the files in the back seat, Jones grabbed his buttocks and commented that he was a good teacher, and that if he kept it up, he might receive tenure. Mr. McCord immediately moved away from Jones to prevent further fondling. Mr. McCord was not interested in engaging in a romantic relationship with Jones and indicated as much on several occasions.

20. Jones made a point to grab and touch Mr. McCord nearly every time they had a private meeting together. Said meetings occurred at least once a week. Jones repeatedly touched Mr. McCord's chest, arms and ran her hands down his legs. For example, in 2011, Jones and Mr. McCord planned to have a professional lunch meeting. Scheduling conflicts necessitated that said meeting be moved to dinner time. At the dinner, Jones came on to Mr. McCord and rubbed her hands up and down his legs. Jones also suggested that Mr. McCord come over to her house, implying that they would be having sex. Again, Mr. McCord promptly removed Jones's hands from his body, and expressly indicated that he was not interested.

21. In the summer of 2011, Jones invited Mr. McCord to her house to cook "Oxtails" for him, a euphemism for a sexual act. Mr. McCord again turned down Jones's sexual advance, much to her dismay.

22. During the 2011-2012 school year, Jones appointed Mr. McCord as the District Wide Coordinator of the PTO. Jones then mandated that Mr. McCord work late nights with her after the meetings. Jones instructed Mr. McCord to order her dinner and then demanded that he eat dinner with her in her office, at his expense. During this interim, Jones regularly called Mr. McCord into her office for private meetings to continue her harassment. At said meetings, Jones would engage Mr. McCord physically and rub her body against him, rub his arms and legs, comment that he was "very strong" and grunt sexual noises while she was touching him. Mr. McCord did everything in his power to defend himself from Jones's sexual attacks and moved away from her as quickly as possible.

23. By February 2012, Jones apparently grew increasingly frustrated with Mr. McCord's rejections. She began to attack a program ran by Mr. McCord with the help of Human Resources representative Ann Archer. The program was authorized by the District Superintendent and was incredibly successful. Jones became jealous that Mr. McCord was working so closely with Ms. Archer and tried to dismantle the program. She argued that it was not necessary and threatened to pull Ms. Archer off of the program. Jones repeatedly called Mr. McCord and berated him for working so closely with Archer, asking where she

was and why he needed her help. Jones's jealously was appalling and unprofessional.

24. In June 2012, Jones's harassment of Mr. McCord escalated to alarming levels. Jealous with rage, Jones protested and successfully prevented Mr. McCord's reappointment as Department Head. Mr. McCord had performed well in this position since 2008. Jones's proactive decision to remove Mr. McCord as department head resulted in a $20,000 per year decrease in his salary.

25. Between June 2012 and December 2012, Jones engaged in the most heinous, illegal and disgusting behavior during Mr. McCord's time at the District. Jones called Mr. McCord into his office on three occasions under the auspices of discussing his credentials. Rather than discuss his credentials, Jones pressured Mr. McCord to accompany her to her house in Jamaica for the opening of a school. Mr. McCord expressly rejected Jones's request.

26. Furious with his rejection, Jones also demanded that Mr. McCord organize a fundraiser, under the guise of the PTO, for the benefit of her alleged personal school in Jamaica. When Mr. McCord indicated that it would be improper to organize a fundraiser which was not for the benefit of the Wyandanch PTO, Jones demanded that he personally "donate" five thousand dollars ($5,000). After Mr. McCord said that he could not afford such a massive payment due to his son's enrollment in college, Jones's pressed him to donate as much as he could. Fearful

for his job, Mr. McCord wrote Jones's alleged school two checks for $250, hoping to stop her harassment. Between June 2012 and December 2012, Jones called Mr. McCord into her office on three separate occasions to pressure him to go to Jamaica and for money. Jones made it very clear that Mr. McCord would be staying with her at her house, so he should not be concerned about the cost.

27. In September 2012, Jones again attempted to destroy Mr. McCord's career and impeded his work. Jones denied Mr. McCord's request for adequate staffing and instead hired her sister to assist him. Jones's sister was undisputedly unqualified for the position. When Mr. McCord confronted Jones about her sister's lack of qualifications, Jones demanded sexual favors in return for adequate staffing. Jones said that if Mr. McCord "helped her out," she would "help him out." Jones commented "I will buy you some dinner, better yet, come to my house and I will fix you up."

28. In the fall of 2012, Jones began a campaign of defamation against Mr. McCord in retaliation for his refusal to have sex with her. Jones spread false rumors around the District that Mr. McCord had not earned his doctoral degree. Jones had worked with Mr. McCord for ten years and was well aware that he had a doctoral degree, in that he was a lawyer. In fact, the District, on its own initiative, approached Mr. McCord and offered him a $3,000 per year stipend specifically because he had the requisite advanced degree and utilized it while executing his job responsibilities.

29. In the summer of 2012, Mr. McCord confided in Trustee Ronald Allen about Jones's treatment of him. Trustee Allen advised him to inform Superintendent Dickerson. Mr. McCord went to Dickerson's office and informed him about Jones's behavior, yet he simply brushed off his concern, asking no questions, and walked to the men's room. In August or September 2012, Mr. McCord made a complaint to Ann Archer in Human Resources, who instructed him to complain to Dickerson. At this second meeting with Dickerson, Mr. McCord thoroughly outlined Jones's harassment. To Mr. McCord's astonishment, Dickerson again brushed off his concerns and made jokes about Jones's actions. Dickerson remarked that Jones had a "hand problem" and said "just don't let her get you into a corner" while laughing. Dickerson then ended the meeting.

30. Jones's harassment of Mr. McCord only intensified after his complaints to Human Resources and Superintendent Dickerson. Jones started to send employees to Mr. McCord's office to harass him on a daily basis, which negatively affected his staff's productivity. Jones then pushed the Board to pass a resolution which took away Mr. McCord's $3,000 per year doctoral stipend. This resolution was pure retaliation for Mr. McCord's complaints of discrimination and his refusal to have sex with Jones, as he did possess the degree required for the doctoral stipend.

31. On January 15, 2013, Mr. McCord wrote a formal letter to Superintendent Dickerson complaining of the sexual harassment from Jones. (See said letter

annexed hereto as Exhibit A). Shockingly, on February 6, 2013, only three weeks later, Superintendent Dickerson informed Mr. McCord that he was under investigation for alleged receipt of improper stipend payments. (See said letter annexed hereto as Exhibit B).

32. As a result of the foregoing sexual harassment, extortion, retaliation and defamation, Mr. McCord has suffered severe financial hardship and emotional distress.

## CLAIMS FOR RELIEF

33. Based on the foregoing, in; (1) treating Mr. McCord differently than his similarly situated female co-workers; (2) subjecting Mr. McCord to a hostile work environment on the basis of his gender; (3) retaliating against Mr. McCord due to his complaints of discrimination; (4) extorting Mr. McCord due to his gender; and (5) defaming Mr. McCord's character, Defendants violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. §1983, New York State Executive Law §§ 290 et seq. ("NYHRL"), and New York State common law.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, liquidated damage, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the

1.  Awarding reasonable attorneys fees and the costs and disbursements of this action;

2.  Granting such other and further relief that to the Court seems just and proper.

**Further,** Plaintiff demands a trial by jury.


Dated: Garden City, New York　　　　　　　THE LAW OFFICE OF
　　　　　May 17, 2013　　　　　　　　　　　STEVEN A. MORELLI, P.C.
　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　　　　　1461 Franklin Avenue
　　　　　　　　　　　　　　　　　　　　　　Garden City, New York 11530
　　　　　　　　　　　　　　　　　　　　　　(516) 393-9151

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　STEVEN A. MORELLI

## VERIFICATION

State of New York         )
                          ) ss:
County of Nassau          )

     LARRY McCORD, being duly sworn, deposes and says that deponent is a Plaintiff in the within action; that she has read the forgoing **Verified Complaint** and knows the contents thereof; that the same is true to deponent=s own knowledge, except as to the matter therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

                                                LARRY McCORD

Sworn to before me this
17th day of May 2013

_____
Notary Public

GUY C BALL
Notary Public - State of New York
NO. 01BA6223285
Qualified in Suffolk County
My Commission Expires 2/17/2014

15

# Exhibit A

# Wyandanch U.S.F.D.
*Office of Central Attendance*
54 South 32nd Street
Wyandanch, New York 11798

Pless Dickerson, Ed.D.                               Larry McCord, *M.S., Ph.D., J.D.*
Superintendent                                       Attendance Supervisor

MEMO

To:    Pless Dickerson, Ed. D., Superintendent of Schools

From:  Larry McCord

Date:  January 15, 2013

It is with a deep sadness that I must make a written report to you since my previous verbal reports to you were without action.

Dr. Mary Jones, Asst. to the Superintendent for Human Resources has engaged in inappropriate behavior and sexual harassment against me. She has made several advances of a sexual nature and numerous demands for funds from me. Her propositions include requests to come to her home in Long Island so she would cook me "Oxtails", which is a euphuism for sexual act; and requests to travel with her to her home in Jamaica, West Indies.

Dr. Jones became so angry one day because of my repeated refusals of her advances that she called me over to her office and told me that she was looking in to investigating a colleague's doctorate. She indicated he had nothing in his file to corroborate his degree. She asked if I had mine? I responded "you know I do". She then unrolled a set of blueprints or plans and said this is a school I am building in Jamaica on my land and stated "I want you to give me $5,000 for class room".

I informed her that I did not have the money. When I failed to show up at her home for " Oxtail" the sexual harassment escalated. She placed her sister in my department, who was unqualified for the vacancy in my office. When I refused to give her the $5,000 again the resolution for my appointment to Attendance Supervisor position was withdrawn. When that did not make me hire her sister to a permanent position or travel to Jamaica with her during the school break, she circulated information throughout the community that I did not have an earned doctorate.

She has now resorted to sending one of her henchmen to check my office daily, which is yet another form of harassment impacting the productivity and harmony amongst my staff. Since I did not acquiesce to her sexual advances she used her position as Asst. Superintendent for Human Resources to negatively impact my salary, damage my reputation in the community and my good name and create a hostile work environment. This is definitely an abuse of her power and authority.

Cc:    District Clerk
       Wyandanch Board of Education

Cc:    Scott O'Brien, WTA President

# Exhibit B

# WYANDANCH UNION FREE SCHOOL DISTRICT
### Central Administration Building
1445 Dr. Martin L. King, Jr., Boulevard
Wyandanch, New York 11798-3997

BOARD OF EDUCATION

Bishop Michael V. Talbert Sr., President
Mrs. Shirley Baker, Vice President
Bishop Ronald Allen Sr., DD, Trustee
Ms. Nancy Holliday, Trustee
Mr. Charlie B. Reed, Trustee
Elder Barry Sexton, Trustee
Elder Thomas Tolliver, Trustee

Betty Jo Joynes
District Clerk
31 870-0405
Fax 631 510-3173

Stephanie Howard
Assistant District Clerk
31 870-0405
Fax 631 510-3173

DISTRICT MAIN
AUTOMATED DIRECTORY)
31 870-8400

CENTRAL ADMINISTRATION

Pless M. Dickerson, Ed.D.
Superintendent of Schools
31 870-0401
Fax 631 491-8539

Dr. Mary Jones
Assistant to the Superintendent
for Educational Services
31 870-0410
Fax 631 491-1210

Kenneth W. Rodgers, Ed.D.
Business Administrator
31 870-0420
Fax 631 491-8510

Ms. Denise Gibbs
Asst. Superintendent for PPS
31 870-0435
Fax 631 491-1243

Mrs. Gina Talbert
Director of Elementary Education
31 878-0419
Fax 631-510-3139

Mrs. Sharla Wilson
T Project Coordinator for
Technology, Media & Information
31 870-0440
Fax 631 510-3139

SCHOOLS

Wyandanch Memorial High School
54 South 32nd Street
Mr. Paul Sibblies, Principal
31 870-0450
Fax 631 491-8525

Milton L. Olive Middle School
40 Garden City Avenue
Mr. Kester Hodge, Principal
31 870-0525
Fax 631 491-8570

Martin L. King Jr.
Elementary School
92 Mount Avenue
Dr. Darlene White, Principal
31 870-0555
Fax 631 491-8573

LaFrancis Hardiman
Elementary School
92 Mount Avenue
Mrs. Delores Jenkins, Principal
31 870-0588
Fax 631 491-8572

February 6, 2013

Mr. Larry McCord
c/o Wyandanch Union Free School District
1445 Straight Path
Wyandanch, NY 11798

Re: Wyandanch School District

Dear Mr. McCord:

Please be advised that the Wyandanch Board of Education has appointed an independent investigator to conduct an investigation in connection with a school district matter, specifically allegations of improper stipend payments for unapproved doctoral/graduate degree programs.

The investigator would like to speak to you in connection with this investigation. You are to appear on Tuesday, February 12, 2013 at 11:30 am at the offices located at Central Administration Building (Small Board Room).

You have the right to bring a union representative or attorney with you to this meeting, in as much as the meeting may lead to disciplinary action. Furthermore, please do not discuss this matter with others as to prevent jeopardizing the integrity of the investigation.

Thank you for your attention to this matter.

Very truly yours,

Pless M. Dickerson, Ed.D.
Superintendent of School

C: Board of Education
Lisa Hutchinson, Attorney
Scott O'Brien, WTA President
Personnel File